CHARLEY WALKER v. THE STATE.

No. 14427. Delivered June 22, 1932.
Reported in 51 S. W. (2d) 721.

238

LATTIMORE, J., dissenting.

The opinion states the case.

*J. A. Johnson,* of Stephenville, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is possession of intoxicating liquor for the purpose of sale; the punishment, confinement in the penitentiary for one year.

Armed with a search warrant, officers went to appellant's residence on July 23, 1930, for the purpose of making a search for intoxicating liquor. Appellant was absent from home when the search was made. The officers testified that the house was locked and that nobody was at home. In a trunk in one of the rooms the officers found approximately seventeen pint bottles filled with a liquid of some character. There was also an empty bottle in the room containing a small amount of liquid. The officers made no test at the time to determine the character of liquid contained in the bottles. No test of any character was made until January 8, 1931, approximately six months after the search. On the date last referred to—which was the day of the trial, the officers tasted and smelled the liquid. During the time intervening between the day of the search and the date upon which the trial was had, the liquid remained in the office of the

justice of the peace where the officers had placed it. Touching the character of the liquid, one of the officers testified as follows: "That's what I term beer; my testimony is, I found beer there at Charley's house; and I took what I term beer into Dr. Goodner's office. * * * I know that it is beer,—I have tasted it. I tasted it awhile ago. We captured this beer along about July twenty-seventh, nineteen hundred and thirty. I did not taste it then. I have not tasted it until today. I don't know as a matter of fact that it was inoxicating at the ime we got it. * * * I don't know whether that stuff had fomented sufficiently to become intoxicating since then or not. * * * I think I took about two swallows. * * * As to my swearing it would make you drunk, I didn't say it is intoxicating, I said it was beer. As to what kind of beer it is, it is what you term 'home brew'; and as to whether or not it is intoxicating liquor, I didn't drink that much of it. * * * Now in regard to: if it is beer, the presumption is that it is intoxicating; beer is supposed to be intoxicating."

This witness testified further on cross-examination as follows: "I can tell from taking two swallows of liquor whether or not it is beer. I can tell whether or not it will intoxicate me; and as to why I didn't swear awhile ago it was intoxicating, you didn't ask me. I am willing to give my opinion here that this stuff, if a man drinks enough of it, will intoxicate him; I believe it would. As to my knowing it would, I wouldn't want to try it. Being asked if I know it—I say yes."

Another of the searching officers, testifying for the state, said: "It smelled like beer. I sampled this beer; I drank some of it. I sampled it. I just sampled it,—as to whether or not it is intoxicating liquor or not,—well,—I know what I am going to say,—well no. Well now as to knowing whether or not it was intoxicating liquor, and knowing whether or not it was intoxicating at the time we got it there,—I know it was beer, is all I know. * * * As to knowing whether or not it would make you drunk I believe it would. * * * I don't know whether it is intoxicating or not; that's what I testified to awhile ago."

A third officer, who took a swallow or two of the liquor on the day of the trial, testified for the state, on direct examination, that the liquor was beer. He said further: "Now as to whether or not it is intoxicating,—well, you know I don't know for sure about that." On cross-examination, the witness said the liquor would make you drunk, if you drank enough of it.

Appellant testified that he did not possess beer at the time the officers made the search. He said that after he was arrested one Henry Alexander told him he had put the liquor in the trunk during appellant's absence from home. Appellant's daughter testified that appellant had no beer in the house. Other witnesses for appellant gave testimony tending to support the theory that appellant did not possess beer. There was no

testimony tending to show that appellant had sold or offered to sell intoxicating liquor.

There was an issue as to whether the liquor was beer or what is commonly called "home brew." If the liquor was "home brew," the evidence to the effect that it was intoxicating was not conclusive. One of the officers who tasted the liquor testified that he could not say whether or not it was intoxicating. None of the officers took over three swallows of the liquor. Under the testimony the jury would have been warranted in concluding that the liquor was not intoxicating. The court instructed the jury that "beer is a known intoxicant, and capable of producing intoxication." The term "intoxicating liquor" was also defined in the charge. The jury were instructed, in substance, that if they entertained a reasonable doubt as to whether the liquor was intoxicating to acquit appellant. The term "home brew" was not mentioned in the charge. The issue as to whether the liquor was beer or "home brew" was not submitted to the jury, unless the instruction defining "intoxicating liquor" and advising the jury to acquit if they had a reasonable doubt as to whether the liquor was intoxicating should be considered sufficient to embrace the issue. Appellant timely excepted to the charge on the ground that the abstract statement that beer is a known intoxicant in effect nullified the instruction defining "intoxicating liquor," and destroyed the effect of the instruction submitting the issue as to the intoxicating character of the liquor. Further, appellant excepted on the ground that the charge in effect advised the jury that the liquor was intoxicating.

The opinion is expressed that the exceptions were well taken. Beer is, within the judicial knowledge of the court, an intoxicating liquor. Fulmer v. State, 115 Texas Crim. Rep., 239, 29 S. W. (2d) 789, and authorities cited. The burden resting upon the state in a given case to show that the liquor was intoxicating is discharged by the proof showing it to have been beer. Fulmer v. State, supra. In the present case, as heretofore stated, there was an issue as to whether the liquor was beer or "home brew." The courts have no judicial knowledge that "home brew" is an intoxicating liquor. Minton v. State, 115 Texas Crim. Rep., 301, 29 S. W. (2d) 765, and authorities cited. If the liquor in question was "home brew" the burden rested upon the state to show that it was capable of producing intoxication. Minton v. State, supra. With no reference being made in the charge to "home brew," the abstract statement that beer is a known intoxicant was calculated to impress the jury with the view that the court had determined that the liquor was beer, and that the question as to whether such liquor was intoxicating was foreclosed, as far as the jury were concerned. Not being informed that "home brew" is not a known intoxicant, and being advised in the charge that beer is judicially known to be an intoxicant, and the issue as to whether the liquor was "home brew" or beer not having been submitted, it is reasonable to

conclude that the jury, in reading that part of the charge to the effect that appellant should be acquitted if the jury entertained a reasonable doubt as to whether the liquor was capable of producing intoxication, entertained the belief that the court, as evidenced by the abstract instruction that beer is a known intoxicant, had reached the conclusion that the liquor was capable of producing intoxication. In the state of the record, with two of the officers testifying that the liquor was beer, and one saying that it was "home brew," and the court instructing the jury that beer is intoxicating, in the absence of some information in the charge as to the distinction between beer and "home brew," the jury could not have been reasonably expected to exercise their perrogative of determining whether the liquor was intoxicating.

Although the jury concluded that appellant possessed the liquor, we think they would have been warranted, under the evidence, in reaching the conclusion that it was possessed for beverage purposes, and not for sale. Appellant testified that he drank beer, but said that he did not sell beer, possess it for sale or offer it for sale. Appellant's requested charge on this issue should, in our opinion, have been submitted to the jury. Such issue was not affirmatively submitted in the main charge.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the undersigned members of the Court.

W. C. MORROW,
F. L. HAWKINS.

LATTIMORE, JUDGE (dissenting).—The majority of the court has concluded that this case should be reversed and remanded apparently on the ground that there was an issue as to whether the liquor found by the officers was beer or home brew. As I view the record, the issue referred to was not made by appellant, and is immaterial to the correct disposition of this case. The officers found seventeen or nineteen bottles of beer in a trunk at appellant's place. He lived at the place with his daughter and cousin. All three of them testified positively that there was no beer of any kind at the place and that appellant did not possess same, nor was there any evidence found indicating that he possessed material or equipment for making liquor of any kind. In other words, the only defense interposed by appellant was that he did not possess this intoxicating liquor whatever it be. He testified that another party told him that he had carried the liquor there and left it at his house, and on this defense the court instructed the jury fully.

The state introduced Mr. Burnett, Mr. McLean and Mr. Thomas, the sheriff, each of whom testified that the liquor found on appellant's

place was intoxicating. All three of these witnesses called it beer. One of the three said on cross-examination "As to what kind of beer it is, it is what we term home brew." No other witness testified that the beer was home brew, nor is there anything in the record to indicate that under the facts of this case there is any difference between beer, as referred to by all the witnesses, and home brew. The same witness who made the above statement on cross-examination, also said: "I am willing to give my opinion here that this stuff, if a man drinks enough of it, it will intoxicate him." Sheriff Thomas said: "As to whether or not it is intoxicating, whether or not it would intoxicate a man, it would, if you drink enough of it." Mr. McLean said: "As to knowing whether or not it would make you drunk, I believe it would." The first witness for the defense, Mr. Gibbs, referred to the liquor found as "this beer," and also "other beer." Again asked as to his identification of the bottles brought into court as those found in appellant's place, he said that he could "testify that it is the same beer." He also said he did not drink any of the beer when he got it. He refers to the liquor a number of times in his direct and cross-examination, and in each instance calls it "that beer." No questions were asked him by the defense in an effort to show that the beer was not intoxicating, or that it was home brew, or anything of that kind. Mr. Wilson, second witness introduced by the defense, testified to being at appellant's place on the day of the raid, and that appellant did not have any beer, and that he did not see him drink any beer, nor was there any sign of any beer being there. This witness raised no question as to the intoxicating quality of the liquor found and gave no testimony thereupon. The next witness for the defense was Mr. Whitaker, who said he was at appellant's place the same day. He testified he did not see any beer there, did not see the defendant have any beer, the defendant did not offer to sell him any beer, nor to sell anybody else any beer; that he did not know there was any beer on the place. This witness gave no testimony regarding the intoxicating or nonintoxicating quality of the liquor exhibited, nor did he testify that it was home brew or anything else than beer. The third witness for the defense, Mr. Ritchie, testified to being with appellant and at his house on the day in question, and that he did not see him drinking. Appellant's daughter was the next witness for the defense, and she said she remembered when her father's place was raided and they claimed to have gotten some beer. She said that her father did not have any beer on the place, and that she never saw him have any beer there. She was asked no question relative to the home brew, or anything else except as to the beer. She affirmed appellant's innocence. The next witness was appellant's cousin, who lived on the place, who on direct examination by appellant's attorney said there was no beer there, that appellant did not sell or drink beer. She gave no testimony relative to

home brew, or the intoxicating quality vel non of any liquor found at appellant's place. Appellant testified himself and said that he was not at home when the officers raided it, and had no beer there that day and never had had any there, and that a man named Alexander told him that he put that beer there. He gave no testimony regarding home brew or anything of that kind, and raised no issue as to the intoxicating quality of the liquor found in his place. This is resume of the testimony in so far as the question of home brew is concerned. It was referred to by one witness one time, who testified, as above stated, that the liquor was home brew, but that it was intoxicating.

In the opinion the question is raised of harm done to appellant by a charge to the jury stating that beer was a known intoxicant. The law is well settled that a case should not be reversed for error in the charge unless it was capable of injuring the rights of the accused, and this seems so entirely incapable of injury that I do not think the case should be reversed for the giving of such charge. As above stated, there was no affirmative testimony in behalf of the defendant challenging the intoxicating quality of the liquor in question, and the three officers who testified for the state all affirm its quality in this regard.

The court charged the jury, following his statement to them that beer was a known intoxicant, that if they believed that the defendant on or about the 23rd day of July, 1930, *did then and there* possess liquor capable of producing intoxication, for the purpose of sale, he would be guilty as charged in the indictment, but if they do not so find and believe beyond a reasonable doubt, they should find the defendant not guilty. In the next paragraph the court told the jury that although they might believe from the evidence, beyond a reasonable doubt, that defendant did possess the seventeen or nineteen bottles of liquor in evidence before them, yet if they further believed from the evidence that at the time he did possess the same, if he did, that it was not capable of producing intoxication, then he would not be guilty, and they should so find, and if they had a reasonable doubt thereof, they should give him the benefit of such doubt, and find him not guilty. Again in the next paragraph the court told the jury although they might believe from the evidence, beyond a reasonable doubt, that there were seventeen or nineteen bottles of liquor found on the premises of appellant, yet if they believed it was put there by Henry Alexander, or any other person, without the knowledge of the defendant, he would not be guilty, and they should so find, or if they had a reasonable doubt thereof, they should give defendant the benefit of such doubt and find him not guilty. The jury gave to appellant the lowest penalty. I find myself unable to believe that there was any serious contention made on the trial of this case over the fact that the liquor found was intoxicating. The verdict fixed beyond question that the jury believed appellant possessed the

liquor for purposes of sale. I am unable to bring myself to believe that he suffered in any way from the fact that the court told the jury the beer was a known intoxicant. I am of opinion the judgment ought to be affirmed.